## CHARLESTON.

ELSWICK v. DESKINS. . ·

Submitted January 18, 1910. Decided December 13, 1910.

1. EQUITY—*Exhibit—Demurrer.*
   . Where a bill alleges a fact and states that a written exhibit will prove the fact, on demurrer that fact will be taken as true, though that exhibit do not prove that fact, if it do not contradict such allegation.

2. MECHANICS' LIENS—*Notice—Affidavit.*
   The notice by the furnisher of materials used in the construction of a building and the affidavit appended to it may be read together to state that the material was used in the construction of the building.

3. SAME — *Enforcement — Pleading — Demurrer — Time of Filing Lien.*
   When a bill to enforce a mechanic's lien for material furnished states that it was recorded in the clerk's office, not stating that it was filed in that office within sixty days from the furnishing of the material, the mechanic's lien record made an exhibit may on demurrer be read to fix the date of the furnishing material and filing the lien.

Appeal from Circuit Court, Mingo County.

Bill by W. B. Elswick against Elizabeth Deskins and others. Judgment for plaintiff, and defendant Elizabeth Deskins appeals.

*Affirmed.*

*John J. Hamrick,* for appellant.

*Sheppard Goodykoontz & Scherr,* for appellee Mingo Lime & Lumber Co.

*C. H. Jones,* for appellee Williamson. *Stokes & Bronson,* for appellee Wayman. *J. L. Stafford,* for appellee Beall Hardware Co.

BRANNON, JUDGE:

In May, 1907, Elizabeth Deskins made a verbal contract with W. B. Elswick, afterwards reduced to writing, under which

Elswick agreed to construct for Deskins on lots owned by her in the city of Williamson a theater building, for the sum of $11,955. Under that contract Elswick did build the theater, doing some extra work under contract, which extra work added to the original contract price brought the cost of the building up to $13,882.26. Elswick filed a mechanic's lien against the theater and the lots on which it stood, and brought a chancery suit to enforce the same in the circuit court of Mingo county. While this suit was pending Elswick made a writing reciting his lien against Deskins, and that a large balance was due him, and assigning to the Mingo Lime & Lumber Company so much of the said mechanic's lien debt as would satisfy indebtedness of Elswick to the Mingo Lumber Company. The Mingo Lumber Company was made a defendant to the bill of Elswick, and filed an answer setting up said assignment and asking the payment of its debt out of the lien of Elswick.

H. T. Williamson furnished Elswick some material entering into the construction of said theater, and he filed a mechanic's lien against it therefor, and for its enforcement he brought a chancery suit in the same court.

The A. H. Beall Hardware Company furnished some material to Elswick entering into the construction of said theater, and filed a mechanic's lien against it therefor, and brought a suit for its enforcement in the same court.

John P. Wayman did the electric light wiring of said theater under contract with Elswick, furnishing material therefor, and he filed a mechanic's lien against the theater therefor, and he filed his petition setting it up in the suits and asking the enforcement of his lien.

The said causes were heard together. There were other claims involved in the suits not necessary here to be specified. During the pendency of the litigation Elswick and Deskins made a written agreement, 26th February, 1908, reciting the pendency of Elswick's suit, and that certain material and labor claims were being asserted as liens on the theater and lots, which were of intricacy, and that Elswick had theretofore made said assignment to the Mingo Lime & Lumber Company for a portion of the mechanic's lien, and then providing that after the amounts of the material and labor claims alleged to constitute liens on said property should be fully adjusted and Deskins and

Elswick should have a final settlement of their accounts, if any balance then be found to be due from Deskins to Elswick the·same should be paid to the Mingo Lime & Lumber Company to the extent of its said assignment, or any amount then due upon the indebtedness provided for by said assignment; and further. providing that the assignment was not intended as a settlement of the account between Deskins and Elswick, but that Deskins being desirous of having the lien released, Elswick agreed to release the lien, and thereby did release it, and to dismiss his suit for the enforcement thereof without waiving his right of action against Deskins as to any amount found due him upon full settlement.

An order was made referring the cases to a commissioner to report what liens, whether mechanic's liens or others, existed against the said property and their priority. The commissioner made a report reporting as valid liens those of Williamson, Mingo Lime & Lumber Company, Beall Hardware Company, the Wayman lien and Eliswick's lien, finding a balance after those other liens due Elswick of $1,569.75.

On the 3rd of October, 1908, a decree was entered in the causes holding that Elswick was indebted to the Beall Hardware Company $251, constituting a lien on the theater property, and to Wayman $346.18, also a lien, and that Elswick was indebted to Williamson $1,507.38, also a lien, and the Mingo Lime & Lumber Company $838, the debt secured by said assignment, to it, and some other lien debts not involved, and declaring them liens on the said property and subjecting it to sale, and providing that the decree should not bind Elswick and Deskins as between themselves from asserting in any court of law the claim of one as against the other, and the matter of amount due on final settlement between them is not passed upon, but is dismissed therefrom without prejudice to one as against the other. From said decree Elizabeth Deskins appeals.

### *The Mingo Lime & Lumber Company's Case.*

It is objected by counsel for the appellant that it was error to decree this debt in advance of a decree finding the true amount of indebtedness between Elswick and Deskins; that until that amount should be fixed and adjudicated by decree as between them there could not be a decree in favor of the Mingo Com-

pany.  It is argued that other liens had prior right over the
Mingo Company's lien and must be first paid, and that the
assignment of Elswick to the Mingo Company could only get
the balance after paying prior liens and in case any balance was
found due from Deskins to Elswick; that there should have
been a decree final between, not only the mechanic lienors
against Elswick, but as between Elswick and Deskins.  There
can be nothing in this.  Even if Elswick and Deskins had not
made the agreement of 26th February, 1908, by which Elswick
agreed to release his lien and to leave the amount as between
themselves after payment of the lien to future settlement or fu-
ture action at law, I do not know that it would have been error to
ascertain the rights of lien creditors of Elswick and adjudicate
their payment out of Elswick's lien, if it was correctly found
that there was enough remaining unpaid from Deskins to
Elswick to satisfy such lien creditors, without decreeing the
balance between them.  But we have not that question before us.
We know that Deskins and Elswick dismissed from this suit
all claim between them after payment of the liens.  We know
that their agreement recognized the pendency of these suits and
that various liens were involved in it, and left them for future
adjudication, and expressly provided for payment of the Mingo
Lime & Lumber Company's debt out of Elswick's lien, if it
should be judicially ascertained that there was money enough
to pay it in the hands of Deskins.  Deskins knew of the as-
signment to the Mingo Company, and it would be preposterous to
say that Deskins and Elswick could by any agreement defeat
the fixed and vested rights of the Mingo Company under its
assignment; to say that they could make an agreement releasing
the lien of the Mingo Company under said assignment, or dis-
missing the suit to the prejudice of that company.  Indeed,
they did not design to do so, for their agreement expressly
provided for the payment of the Mingo Company's debt out of
the fund.  Equally preposterous would it be to say that those
parties could make an agreement to take out of the case the
adjudication of rights as between them and thus frustrate the
Mingo Company from having decreed to it its rights resting
in the suit.  In fact we must interpret the agreement as one
leaving in the suit for future adjudication the right of the
Mingo Company and other lienors, and taking out of it only

the settlement of the balance, if any, remaining due from Deskins to Elswick; and so construing that agreement, it does not lie with Deskins now to say that these suits are rendered inefficacious to give relief to the Mingo Company. She eliminated the settlement between her and Elswick from that suit, and it is not possible to say that she can now say that there shall be no decree as to the rights of the Mingo Company until there shall be a decree as between her and Elswick. The proof and the commissioner's report find a balance due from her, enough to pay the Mingo Company. The evidence shows and the commissioner's report finds that after payment of the liens having priority over the Mingo Company due from Deskins to Elswick there remains a sum more than sufficient to pay the Mingo Company. We see no error in decreeing this debt.

### Williamson's Case.

It is objected that the bill of Williamson is defective in not alleging that by the contract between Williamson and Elswick for furnishing the lumber the lumber was to be used in constructing the theater and was so used. As a legal proposition we do not deny this; but we meet it by saying that the bill, fairly construed, does meet this requirement. The clause of the bill in this respect alleges, "That in the construction of said building the said defendant, W. B. Elswick, entered into a contract with this plaintiff, whereby the said plaintiff in pursuance thereof, furnished material to the said Elswick to be used in the construction of said theater building and which went into the erection and construction of said building, which material consisted of lumber", etc. This shows that the agreement was that the lumber was to be used in the building, and was so used.

We think the account is sufficiently definite. The law cannot require every little piece of lumber to be separately specified in a great building. This account under a certain date gives eleven specifications of numbers of pieces of lumber and their dimensions, making up 8,000 feet, and on another date charges 8,000 feet of dressed poplar, and gives the lump price of $850 for all under those two dates. That is sufficient. Was Williamson required to detail the sizes and character of poplar plank? Shall we so construe the mechanic's lien law as to

overthrow it for such technicality? This specification told Deskins and everybody else what lumber had been furnished and the total price claimed.

It is objected that the building was completed August 16, 1907, that the last lumber furnished by Williamson was on that date, and that the lien was not filed until more than sixty days thereafter, and it was thus too late, and that notice of his lien was not given until thirty-seven days thereafter. Evidence shows that on the 22nd day of September, Williamson furnished a piece of lumber, and on October 29th furnished 100 feet of lumber $\frac{1}{2}x\frac{7}{8}$, and that this lumber was put into the building and essential to it. This would bring the notice within the time prescribed by law. Are we to say, as counsel would have us say, that this last lumber constituted a separate contract and cannot be tacked to the other lumber? Elswick swears that he put some of this lumber into the building on the 26th day of October. The piece of lumber was used in the fly trap for letting the stage curtains down. This was an essential part of the work. The evidence is that the large glass for the front window was broken causing the delay, and that other glass had to be obtained, and that it was put in on the 29th of October, and the 100 feet of lumber furnished by Williamson was used in so doing. Now, this lumber was used in essential parts of the theater, and the building was not complete until it was done, and it cannot be said that the furnishing of the lumber was more than thirty-five days before notice to Deskins, nor that the building was completed until that lumber was furnished. True, the price charged for that lumber furnished the 22nd of September and 29th of October was small, $1.90, but if it was essential, and it was, it would save the balance of the account. It is charged by counsel that the building was really completed except for this small quantity of lumber, and that it is a trick of Williamson and Elswick by collusion to say that the contract with Williamson had not been completed 16th August, and to save the account by these additional items of lumber. That is assumption; no evidence sustains this charge of collusion. It is claimed that the theater was turned over to Mrs. Deskins before these two items of lumber were furnished. The evidence does show that a few days before it was furnished theatrical performances were had therein. That may very well be with-

out the building having been completed. The glass had not been put in the window. That glass was surely a material item in the completion of the building. I think that piece of lumber had not been put in the fly trap then. That was essential to the building. There is no evidence to show any formal turning over of the building to Deskins or real completion of it until the 29th day of October as the earliest date, and in fact the evidence shows that the electric wiring was put in later, and surely until that was done the building was not complete, and that was a part of Elswick's contract as he distinctly states. We find no error in decreeing the Williamson debt.

### The Beall Hardware Company's Case.

Here it is objected that the bill filed as Exhibit No. 5 what is alleged to be the mechanic's lien and that it does not appear on inspection of that exhibit that it was sworn to. Of course, the account filed in the clerk's office as a lien must be sworn to; but the answer to this point is met by a decision of this Court in *Houston Lumber Co.* v. *Welzel & Tyler R. Co.*, this term. It holds that though an exhibit does not show the fact of filing the lien in the clerk's office, yet if the bill alleges that fact and it is not denied in the answer the allegation is taken for true, though the exhibit does not sustain the allegation. That holding is that if the exhibit do not contradict the allegation, the allegation is taken for true. This point rests on a demurrer to the Hardware Company's bill. Its allegation is that it made out a mechanic's lien and that it "was duly sworn to on the day and date aforesaid by C. P. Roach, president of the A. H. Beall Hardware Company, a corporation, before G. M. Millard, a notary public of said county; and that on the 30th day of November, 1907, the said instrument was duly admitted to record in the office of the Clerk of the County Court of said County; all of which will better appear from a copy of said instrument of writing or Mechanic's Lien, which is herewith filed, marked 'Exhibit No. 5', and asked to be made a part of this bill and read in connection herewith." So there was no error in overruling the demurrer for that cause. But it is objected that that affidavit to the notice of lien given by the Hardware Company to Deskins and the affidavit to the lien in the clerks office do not state that the material was used in

the construction of the building. We admit that the affidavit to the notice of liens given the owner must so state. However, that affidavit does state that the account to which it is annexed was "for the construction of a certain building to be used as an opera house for Elizabeth Deskins, situate" etc. Turning to the notice preceding that affidavit we find it states that the account to which it refers is an account "of materials furnished by the undersigned, the A. H. Beall Hardware Company, under contract with the said W. B. Elswick, contractor aforesaid for the purpose of building a certain house known and denominated as an opera house for the said Elizabeth Deskins", describing the property further, and that Elswick was indebted to the company for "materials furnished * * * * for the construction of a certain opera house for Elizabeth Deskins", describing the lots. Now, these papers do not affirmatively and distinctly say that the material was actually used in the actual building of the house, but when they tell us that such material was furnished for the construction of that house, is it straining them to say that the reasonable construction is that they say the material was actually so used? We think that it would be technicality to overthrow a just claim for such cause. This mechanic's lien statute is not so rigid as to demand it. As to the failure of the affidavit to the lien to state that the material was actually used in the building we do not think that Code 1906, chapter 75, section 4, requires that affidavit to so state. I remark here, though it could not be considered on demurrer, that as proof an exhibit before the commissioner cured this trouble, if cure was necessary under the allegation of the bill.

### Wayman's Case.

As to this case it is objected on demurrer to the petition filed by Wayman, that there is no allegation in it that Wayman within sixty days from the time of doing the work and furnishing material had his lien recorded in the clerk's office. This is the allegation of the petition as to this: "Petitioner further says that within thirty-five days from the time said labor and material was furnished for said opera house under the contract aforesaid, he filed with the said Elizabeth Deskins, the owner, an duly itemized statement of the work done and materials

furnished, verified by affidavit, as appears from said Exhibit 'A', Said account was duly recorded in the County Court Clerk's Office of said county in Mechanics Lien Book Number 1, Page 221." This allegation says that the account was recorded in the clerks office; it proves that fact, but it does not say that it was filed within sixty days; but turning to the account we find that the last labor and material done and furnished was December 21st, and the account was served on Deskins 26th December, 1907, and filed in the clerk's office January 7, 1908. Can we refer to that exhibit to help out the bill and prove that the account was filed within sixty days? I think we can. It is useless to cite decisions of this Court to prove that an exhibit is a part of the bill, there being many such. I am not asserting that under the rules of equity pleading an exhibit can take the place of a positive, essential and affirmative averment when required by those rules; but I do say that in an instance like the present, where the main fact of filing is asserted in the pleading, the minor fact of date may be shown by reference to the pleading. *Richlands* v. *Hillebeitel,* 92 Va. 91. We find it stated in 31 Cyc. 561, that where an exhibit is part of the pleading, as it is in this state, "the effect is as if the instrument sued on were set out in the pleading." See 8 Ency. Pl. & Prac. 740. Whilst I am not to be understood as holding that an exhibit may take the place of an essential affirmative averment, yet I say it may often be taken to cure defect and amplify an allegation, and I think that it is clear that we can inspect this exhibit in connection with the allegation that it was filed in the clerk's office to prove the date of filing. It is argued that Wayman's account dates December 21, and that Elswick's deposition shows that on the 26th of October the building was completed, except putting in the glass window, and therefore Wayman's work was done after the completion of the contract between Deskins and Elswick. Elswick does state, as must be admitted, that the building was completed 29th of October; but on the whole evidence we must take that statement as incorrect, because he states that the wiring was done by Wayman and was within his contract with Deskins, and if so, the house was not completed until 21st of December. Who will say that the electric lighting wires were not an essential part of the completion of the building? The proof shows that that work was done in December,

and therefore this building was not completed until that time.. We must not take Elswick's statement literally, we must not take the statement of any witness as infallible and conclusive, but we must look to all the evidence and circumstances. How could his statement that the building was completed 29th of October be true when he says that the wiring was a part of his contract, and beyond doubt it was not done until December 21. Elswick in that statement merely meant that the brick and carpenter work was done by 29th of October.

Upon a review of this case we do not see that any injustice has been done, the debts being just, and we do not find any substantial ground for a reversal of the circuit court, and therefore affirm the decree.

*Affirmed.*