AMHERST LAND COMPANY, *Corp.*

*v.*

UNITED FUEL GAS CO., *et al.*

(No. 10678)

Submitted September 15, 1954. Decided November 9, 1954.

*W. Goodridge Sale, Homer A. Holt, Jackson, Kelly, Holt* and *Moxley,* for appellant.

*R. K. Talbott, C. E. Goodwin, A. D. Duduit, Steptoe & Johnson, Stanley C. Morris, E. Loyd Leckie,* for appellees.

BROWNING, JUDGE:

This is a suit by which plaintiff seeks to obtain discovery of facts relating to all wells within an area designated as Storage Pool X-1 in Putnam County, particularly as to the operation and production of Well No. 1388; an accounting of royalties allegedly due therefrom; a mandatory injunction requiring defendants to meter such well; and other general relief.

Plaintiff sets forth in its bill of complaint that, in 1936, its predecessor in title leased the oil and gas underlying a large tract of land, "with the exclusive right of mining and operating thereon for the production of oil and gas", to the defendant Godfrey L. Cabot, Inc., hereinafter called Cabot, on a one-eighth royalty basis, pursuant to which Cabot drilled a number of wells into the Big Lime stratum, including two wells, Nos. 1060 and 1087, on a certain 795 acre portion of the leased tract. This 795 acres is now a part of defendant United Fuel Gas Company's Storage Pool X-1, and is included in an agreement entered into by Cabot in 1948 with United Fuel Gas Company, whereby Cabot granted, in so far as it had the right to do so, "the exclusive right and privilege of utilizing said Big Lime Formation * * * for the purpose of forcing natural gas therein and subsequently removing same * * *."

This agreement provided, among other things, for delivery to Cabot of 340,000,000 cubic feet of gas to compensate for the recoverable reserves remaining in the Big Lime formation, less a certain percentage which United Fuel Gas Company would be required to pay to the owners of the royalty; for the purchase of six wells by United Fuel Gas Company, including Wells Nos. 1060 and 1087, heretofore mentioned; for the operation by United Fuel Gas Company of all wells then on the tract, with the privilege of drilling additional wells to the Big Lime formation, if required; and the assumption by United Fuel Gas Company of full responsibility of settling with the

lessors of the oil and gas in lieu of the royalties which would otherwise accrue to them from the recoverable gas reserves.

Subsequently, in 1949, plaintiff granted, in so far as it had the right to do so, the 795 acre portion "for the purpose of drilling wells to the Big Lime formation and operating wells heretofore drilled to said horizon, for the purpose of storing gas therein, [and] removing and marketing the same, * * *.", to United Fuel Gas Company. Under the agreement, United Fuel Gas Company agreed to pay to plaintiff $150.00 a year for Well No. 1087, $150.00 a year for Well No. 1060, and $300.00 a year for each well drilled thereafter to the Big Lime stratum so long as such well should be utilized for the injection of gas therein, and the removal of gas therefrom. "The payments herein provided shall constitute the entire emoluments accruing to lessor [plaintiff] hereunder, for all wells heretofore or hereafter drilled to said Big Lime stratum; however the emoluments herein provided shall, in no wise, affect the emoluments accruing to Lessor for any well drilled to any stratum other than the Big Lime." Article 9 then provides for payment of $864.36 to plaintiff for Well No. 1087, and $50.64 for Well No. 1060, for the estimated recoverable gas reserves in such wells. The execution of this agreement, made expressly subject to all the then existing oil and gas leases, was consented to by Cabot, who further agreed that the execution thereof would not relieve it of any obligations or duties under its lease of 1936.

The bill of complaint then alleges: That Cabot completed Well No. 1388 into the Big Lime formation in July, 1952, which well has a daily production capacity of 19,000,000 cubic feet, and sold its rights therein to United Fuel Gas Company; that defendants have refused to divulge any information concerning said well; that there was a large quantity of natural gas remaining in the Big Lime formation underlying the 795 acres, for which plaintiff had not been compensated for its loss of royalty; and

that plaintiff is without information as to the amount of new or primary gas, as distinguished from storage gas, being produced by Well No. 1388. In conclusion, the bill prays for the relief heretofore stated.

Defendants demurred to the bill on the ground that it appears from the face thereof that plaintiff does not have such an interest in the subject matter of the suit as will enable the plaintiff to maintain it. The Circuit Court of Putnam County sustained the demurrer and ordered the bill dismissed from which decree this Court granted an appeal on May 17, 1954.

The ruling of the trial court was based upon an alleged conflict between the allegations of plaintiff's bill and certain exhibits filed therewith and made a part thereof. The exhibits so filed that are pertinent to the issue here presented are: (1) The 1936 lease, Exhibit No. 2, between Cabot and plaintiff's predecessor in title, by which Cabot acquired the right to produce oil and gas from all strata under a 2,762.72 acre tract, of which the 795 acre tract involved in this litigation was a part; (2) an executory agreement of May 7, 1948, between Cabot and United Fuel Gas Company, hereafter referred to as United, Exhibit No. 3, by which United would subsequently acquire the right to utilize the Big Lime formation under a tract of 3,537.90 acres, of which the 795 acre tract was a part, provided that United should, within a specified time thereafter, secure the necessary additional rights from the owners of estates therein other than Cabot; (3) the agreement of April 28, 1949, between plaintiff's predecessor in title and United, Exhibit No. 4, whereby United secured certain rights in the Big Lime stratum underlying the 795 acre tract in question; (4) an assignment by Cabot to United, dated April 10, 1952, pursuant to the executory agreement of May 7, 1948, involving Cabot's rights in the large tract comprising storage Pool X-1 relative to the Big Lime stratum; and (5) the consent by Cabot to the execution of the agreement of April 28, 1949, between United and plaintiff's predecessor in title, which is a part of Plaintiff's exhibit No. 4.

Upon the primary issue thus raised by the bill and demurrer thereto, as to whether plaintiff is entitled to royalties of one-eighth of the gas produced and marketed from Well No. 1388, assuming that all or some portion of such gas is primary or native gas, the trial court held that: "The rights asserted here in this cause were alienated by the agreement of April 28, 1949 (Exhibit No. 4 with the bill) and by the following language thereof; * * *."

It is clear from the exhibits filed with the bill that all the provisions of the 1936 lease between Cabot and plaintiff's predecessor in title are still in effect, except in so far as they may have been altered as to the Big Lime stratum by the 1949 lease between United and plaintiff's predecessor in title. It is also apparent, and not disputed, that by virtue of the 1949 lease, United has the right to use the Big Lime stratum underlying the 795 acre tract for the purpose of storing gas secured elsewhere and injected into such stratum. The plaintiff contends that the production rights contained in the 1936 lease to the Big Lime stratum have not been affected by any subsequent agreement to which it was a party, and that such rights are not affected by the subsequent grant of storage rights in that stratum to United by the 1949 lease.

The plaintiff contends that its exhibits, and particularly Exhibit No. 4, the 1949 lease between United and plaintiff's predecessor in title, were offered for a limited purpose, and that on demurrer such an exhibit can not nullify an allegation of the bill which it was not offered to support, whatever may be its effect upon the final hearing of the cause upon its merits, citing *Donahue* v. *Rafferty,* 82 W. Va. 534, 96 S. E. 935; *Gleason* v. *Thomas,* 117 W. Va. 550, 186 S. E. 304. An examination of those cases indicates that they are readily distinguishable from the instant case in that in each of them it was apparent from the specific allegations, and the intentions of the pleader, that the questioned exhibit was not relied upon for general purposes, and that the pleader "did not attempt to base his case on the same." It is obvious that the exhibits here were an integral part of plaintiff's case, and relied upon

by it to support the allegations of its bill. This Court held in Syllabus Point 5, *Caswell* v. *Caswell*, 84 W. Va. 575, 100 S. E. 482, that: "Exhibits filed in support of a pleading are considered parts thereof, and, if they contradict the matters alleged, will control."

In *Hawkinberry* v. *Metz*, 91 W. Va. 637, 114 S. E. 240, the 1st Syllabus Point is as follows: "Where a deed or other instrument pleaded is exhibited with a bill, the court on demurrer will look to the instrument itself and not to what is alleged of it, to determine its character and the terms and provisions thereof."

Again, in *Black* v. *Maxwell*, 131 W. Va. 247, 46 S. E. 2d. 804, this Court, speaking through Judge Haymond, said: "The rule is well established, however, that when exhibits are filed in support of a pleading they are considered as a part of it and if the two are in conflict the exhibit will control and be looked to by the Court."

The plaintiff further maintains that the 1948 agreement between Cabot and United was not made a part of the 1949 agreement between plaintiff's predecessor in title and United. However, in the third whereas clause of the latter agreement, Exhibit No. 4, this specific reference is made to the agreement of May 8, 1948, Exhibit No. 3, between Cabot and United: "* * * subject to lessee's securing the approval of Lessor herein, to utilize 795 acres of the above mentioned 2,762.72 acre tract of land (said portion so containing approximately 795 acres, being colored in purple on the map attached thereto and made a part hereof), together with the gas wells located thereon, for the purpose of conducting storage operations in the Big Lime stratum, including the right to drill other wells to said stratum and to plug and abandon any wells heretofore or hereafter drilled thereon; * * *." Furthermore, in the 9th Article of this lease, Exhibit No. 4, this language was used: "Lessee agrees, in compliance with the requirements of Article Seventh of that certain contract dated May 7, 1948, between Lessee herein and Godfrey L. Cabot, Inc., involving, among others, the tract of land embraced herein, * * *."

In 4 M.J., Contracts, §49, it is stated: "* * * In fact, a written agreement constituting a single contract need not be encompassed in one instrument as between contracting parties. It may be comprised of two or more instruments and be enforceable as a whole, if the relationship between the several papers is clearly established. And the contract may refer to preliminary instruments which may be read with the contract in construing it. Thus, where a contract refers to prior contracts to which one of the parties was a party for further particulars, it must be construed with reference to such prior contract. * * *"

Material parts of the 1948 agreement were specifically referred to in the 1949 lease and were thereby incorporated in the latter. However, this Court finds no irreconcilable conflict between the exhibits and the bill, or between the 1949 lease and the production lease of 1936. The latter confined itself to the production of gas from the Big Lime stratum and the former to the storage of gas therein. Furthermore, an examination of certain pertinent provisions of the 1949 agreement would indicate that there was no surrender of any rights under the 1936 production lease agreement. The third paragraph of the Third Article, Exhibit No. 4, reads in part as follows: "The payments herein provided shall constitute the entire emoluments accruing to Lessor *hereunder,* for all wells heretofore or hereafter drilled to said Big Lime stratum; * * *." (Italics supplied.)

The Eighth Article provides: "It is agreed between the parties hereto that the rights herein granted to Lessee are made expressly subject to any and all existing right of ways, rights of tenant farmers, truck miners, if any, and the rights of other parties rightfully in possession, *as well as to all existing oil and gas leases.*" (Italics supplied.) There was only one oil and gas lease in existence, that being the 1936 lease between plaintiff and Cabot. In its consent to the execution of the 1949 agreement, Cabot agreed "that the execution of said lease

by the Hatfield-Campbell Creek Coal Company [plaintiff's predecessor in title] does not and shall not in any manner relieve Godfrey L. Cabot, Inc., from any of its duties and obligations under the terms and provisions of said lease dated September 30, 1936."

In the "assignment and lease" agreement of April 10, 1952, between Cabot and United, Article 1 reads in part as follows: "Cabot hereby assigns, transfers and sets over unto UNITED all the following oil and gas leases, and the leasehold estates created thereby, in so far and so far only as each of said leases authorizes and grants the right to operate for and produce oil and gas from the Big Lime formation or stratum underlying the same, * * *."

In the 1948 Agreement, Cabot granted to United "the *exclusive* right and privilege of utilizing said Big Lime formation underlying the tract of land aforesaid * * * for the purpose of forcing natural gas therein and subsequently removing same * * *." (Italics supplied.), but in the 1949 Agreement between plaintiff's predecessor in title and United, the last whereas clause states that: "Lessor, in so far as it has the right so to do, has agreed that Lessee may utilize the Big Lime stratum in and underlying said 795 acres for the purpose of conducting storage operations in said stratum, * * *."

By the Seventh Article of the 1948 Agreement "United assumes full responsibility and liability of settling with the lessors of the oil and gas in place (other than Cabot) in lieu of the royalties which would otherwise accrue to them for the said recoverable gas reserves, relieving Cabot of all liability in connection therewith.", but by the 1949 Agreement, Article Nine, United agrees only to pay to plaintiff's predecessor in title certain sums for the "estimated recoverable gas reserves in Well No. 1087", and "for the estimated recoverable gas reserves in Well No. 1060", and plaintiff's bill alleges that there was native gas underlying the 795 acre tract not recoverable from these wells for which it has not been compensated.

That there is language in the 1949 Agreement, indicating that United was granted the "exclusive" use of the "entire"

Big Lime stratum for the "sole" purpose of utilizing it for the storage of gas to the exclusion of its use for any other purpose during the term of the lease, cannot be denied, but none of these terms is contained therein. On the other hand, the bill, though conceding that Cabot was then a trespasser, alleges that Cabot completed a well, No. 1388, into the Big Lime stratum and then sold its rights therein, if any, to United. Whether a particular subterranean stratum may be used at the same time for storage of gas, and for production therefrom, this Court is not at liberty to determine from the record before it. The fact that there may be some ambiguities between the bill and exhibits accompanying it does not necessarily create a fatal repugnance on demurrer. "Facts which are sufficiently alleged in bill must be taken as true on demurrer unless they are inherently impossible, or contradicted by other facts alleged, even though court may be of opinion that they are probably not true." Pt. 4 Syllabus, *Ames et al.* v. *American Nat. Bank of Portsmouth,* 163 Va. 1, 176 S. E. 204.

In determining the validity of plaintiff's bill, this Court cannot consider anything which does not appear on the record. "Where a bill alleges a fact and states that a written exhibit will prove the fact, on demurrer that fact will be taken as true, though that exhibit *do* not prove that fact, if it *do* not contradict such allegation." Pt. 1 Syllabus, *Elswick* v. *Deskins,* 68 W. Va. 396, 69 S. E. 894.

It is the duty of the Court to determine from these instruments, not necessarily the real intent of the parties, but the intent expressed as apparent in the instruments themselves.

There being no irreconcilable conflict or fatal repugnance between the bill and exhibits, this Court cannot hold upon demurrer that plaintiff has failed to set forth sufficient facts which, if sustained by proof, would entitle it to the relief prayed for. The demurrer will be overruled, the bill reinstated, and the cause remanded for such further procedure as the parties are advised.

*Reversed.*